WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zen Laboratory LLC, | No. CV-25-03675-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Shenzhen Haitaifangyuan Dianzishangwuyouxiangongsi, | |
| Defendant. | |

At issue is Defendant Shenzhen Haitaifangyuan Dianzishangwuyouxiangongsi's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17, Mot.), to which Plaintiff Zen Laboratory LLC responded (Doc. 20, Resp.) and Defendant replied (Doc. 21, Reply).

I.    BACKGROUND

At the heart of this matter are two products sold online as "Fidget Poppers Pack" that contain small toys for children. Plaintiff uses the phrase "FIDGET POPPERS PACK" ("Mark") as an unregistered trademark. (FAC ¶ 10). The product is packaged in a blue, geometric patterned box with the front-facing panel displaying the Mark in white, bold lettering across a horizontal stripe above a graphic of three toys. (FAC ¶¶ 10–11.) The top-facing panel is similar except it does not show the graphic. (FAC ¶ 11.) Plaintiff uses the front and top panels as its unregistered trade dress ("Dress") as depicted in the following images from Plaintiff's First Amended Complaint:

. . .

. . .

 

(FAC ¶ 11.)

Plaintiff adopted and has used the Mark and Dress since June 21, 2021. (FAC ¶ 18.) Plaintiff also owns Copyright Registration Number VA0002321292 ("'292 Registration") consisting of the front panel of the Dress. (FAC ¶¶ 25–27.) Plaintiff sells its product on an Amazon storefront and its own commercial website. (FAC ¶ 9.) Plaintiff has spent millions of dollars to promote its Mark and Dress through Amazon, Google, video ads, and sponsorships, sold hundreds of thousands of units, garnered over 16,000 Amazon reviews, and received an average rating of 4.6 out of 5 stars. (FAC ¶¶ 21–22.)

Defendant also sells a product on Amazon called "Fidget Poppers Pack" that comes in a blue, geometric patterned box with the words "FIDGET POPPERS PACK" displayed in white, bold lettering across a horizontal stripe on the front- and top-facing panels of the package and features a graphic of several toys on the front panel as shown in the following images from Plaintiff's First Amended Complaint:

 

(FAC ¶¶ 29–30.)

Plaintiff sued Defendant on the following claims: (1) false designation of origin in violation of 15 U.S.C. § 1125(a); (2) trademark infringement under Arizona common law; (3) unfair competition under Arizona common law; (4) copyright infringement in violation

- 2 -

of 15 U.S.C. § 501. Defendant now moves to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). This rule equally applies to counterclaims. A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.    ANALYSIS

#### A.    Trademark Infringement Claims

Plaintiff's first claim arises under § 43(a) the Trademark Act of 1946 ("Lanham Act") (codified as amended at § 1125(a)), which prohibits uses of trademarks, trade names and trade dress that are likely to cause confusion about the source of a product or service. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing § 1125(a)). Plaintiff's second and third claim assert violations of Arizona common law for trademark infringement and unfair competition. While the second and third claims are denoted as separate in the pleading, the state common law treats them as one and applies the same standard as a federal trademark infringement claim under the Lanham Act. *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998) (noting that a common law unfair competition claim includes a tort theory of trademark infringement); *Carve Design LLC v. Slingshop LLC*, No. CV-25-03521-PHX-DWL, 2026 LX 296963, at *39 (D. Ariz. May 29, 2026) ("Common law trademark claims are substantially congruent to claims made under the Lanham Act. . . . Courts thus address Arizona common law trademark claims under the framework of federal law.") (citation omitted) (collecting cases).

"To state an infringement claim under § 1125(a)—whether it be a trademark claim or a trade dress claim—a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046–47 (9th Cir. 1998). Defendant challenges only the first element. (*See* Mot. at 4–9; Reply at 2–7.)

Distinctiveness is assessed on a spectrum of five categories in ascending order: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Kendall-Jackson Winery*, 150 F.3d at 1047. The Ninth Circuit defines these points as follows:

> Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product. Descriptive terms directly describe the quality or features of the product. A suggestive mark conveys an impression of a

> good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature. Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language, whereas the latter are wholly made-up terms.

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (internal citations omitted).

At the least distinctive end of that spectrum, "[a] 'generic' term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). In contrast, marks that are suggestive, arbitrary or fanciful "are deemed inherently distinctive." *Kendall-Jackson Winery*, 150 F.3d at 1047. "Marks that are descriptive fall in the middle of these two extremes," and while they are not inherently distinctive" they "can acquire distinctiveness if the public comes to associate the mark with a specific source . . . referred to as 'secondary meaning.'" *Id*. Here, Defendant argues that the Mark is generic[1] because it is "a straightforward revelation of what Plaintiff's product is." (Reply at 4.)

To determine whether a mark is generic, courts in the Ninth Circuit apply the "who-are-you/what-are-you" test," in which the former question would reveal the source of the product and is not generic, and the latter would reveal the product's purpose or use and is generic. *Filipino Yellow Pages*, 198 F.3d at 1147 ("Under this test, if the primary significance of the trademark is to describe the type of product rather than the producer, the trademark is a generic term and cannot be a valid trademark.") (citation modified). A mark must be considered in its whole form, not as its parts. *Id*. (approving the "anti-dissection rule" that prohibits evaluating the genericness of a trademark by its parts).

Defendant argues that the Mark answers what, not who, the product is (Reply at 3–5), but the Court is not as sure. It is just as likely that the public can perceive the Mark as

---

[1] Defendant does not expressly argue that the Dress is generic, so the Court will not evaluate it as such.

describing a pack of fidget toys or denoting a brand of children's toys. At this stage with only allegations before the Court, the "who-are-you/what-are-you" test is neither dispositive nor helpful in determining the validity of the Mark. Nonetheless, the Court is not without guidance from case law, and the Ninth Circuit has held that "[g]eneric terms are those used by the public to refer generally to the product rather than a particular brand of the product." *Brookfield Commc'ns*, 174 F.3d at 1058. As applied here, the phrase "fidget poppers pack" does not describe the entire genus of children's toys like other phrases found to be generic, such as the phrase "Filipino Yellow Pages" that described the genus of phone directories or "Surgicenters" that described the genus of surgical centers. *See Filipino Yellow Pages*, 198 F.3d at 1151 (affirming genericness finding); *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1020 (9th Cir. 1979) (same). In reviewing the Mark as a composite and not as its parts and without the benefit of an evidentiary record, the Court does conclude at this juncture that it is generic.

To Defendant's credit, though, the line between generic and descriptive is thin here. It may be that the public perceives the primary significance of the Mark as denoting the goods and not the source. Without a developed record that includes, for example, evidence of public perception, the Court must rely only on the allegations before it and not its own assumption of public perception. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 330 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985) ("Without evidence that to the consuming public the primary significance of the term is to denote the service [the mark] offers and not its source, we are without a sufficient evidentiary basis to find [the] mark generic.").

Defendant next challenges whether the Mark and Dress have acquired secondary meaning, which is required when a mark or dress are only descriptive and therefore are not "inherently distinctive." (Mot. at 6–9.) Secondary meaning is met when the public associates the mark or dress with a particular source and "can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales

and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages*, 198 F.3d at 1151.

Here, Plaintiff alleges that it has spent millions of dollars in marketing efforts, sold "hundreds of thousands of units" bearing the Mark and Dress since 2021, and has accrued thousands of customer reviews on one of the world's leading marketplaces for goods, Amazon. (FAC ¶¶ 19, 21–22.) The Court can infer from these facts that Plaintiff's Mark and Dress has penetrated the market for this genre of toy and has been disseminated to some extent by virtue of extensive marketing efforts over a period of several years, which ultimately supports Plaintiff's claim that the purchasing public has formed some association between the Mark, the Dress, and the product. Defendant argues that such allegations "can only prove the strength of ZEN LABORATORY, the house brand of Plaintiff" that is shown on the Amazon storefront product page and on the Dress of the product, but it cannot prove the strength of the Mark. (Reply at 4.) But the pleading stage is not the time to evaluate whether the public's association is between the product and the Mark or the product and Plaintiff's house name. That step comes later after discovery runs its course.

Plaintiff also alleges that Defendant purposely copied the exact Mark and substantially similar Dress (FAC ¶ 49), and allegation of "deliberate copying is relevant to a determination of secondary meaning." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987) (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985) ("There is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.")). Defendant argues that such allegations are conclusory and insufficient to state a claim; only *proof* of deliberate copying will support an inference of secondary meaning. (Reply at 6–7.) That may be true where the claims must be proved up to some evidentiary threshold like at a preliminary injunction stage or summary judgement stage, as in the cases cited by Defendant. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) (preliminary injunction); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1256

(9th Cir. 2001) (summary judgment); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1141 (9th Cir. 2009) (Rule 50(b) motion). At this stage, though, proof is not required, just sufficiently alleged facts. *Dean v. Cortes*, No. 218CV02335CASJPRX, 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) ("[C]ourts have determined that secondary meaning need only be pled generally for purposes of defeating a motion to dismiss.") (finding that allegations of long-term use and deliberate copying were sufficient to state a claim for trademark infringement).

Here, Plaintiff's allegations are sufficient to establish that the Mark and Dress are at least descriptive and have attained secondary meaning and meet the first element of a § 1125(a)(1)(A) claim. Accordingly, Plaintiff's trademark infringement claims asserted in Counts One, Two, and Three may proceed as pled.

### B.    Copyright Infringement Claim

To plead a copyright infringement claim, a plaintiff must allege "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Defendant does not challenge the first element; rather, it argues that Plaintiff's claim fails because it insufficiently alleges that Defendant copied the protected elements of the work.

The second element of a copyright infringement claim requires a plaintiff to "plead facts plausibly showing either (1) that the two works in question are strikingly similar, or (2) that the works are substantially similar and that Defendants had access to the Subject Work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (citation omitted). "Thus, a plaintiff must separately plead access only when alleging substantial similarity, not when alleging striking similarity." *Id.* (citation omitted).

No matter which theory of copyright infringement a claim is packaged in, courts in this Circuit evaluate those claims under an extrinsic test and an intrinsic test. *Id.* At the pleading stage, the Court need only consider the extrinsic test that is comprised of two steps. *Id.* First, courts filter out the "unprotectable elements" of the work and evaluate whether the remaining protectable elements show a range of expression broad enough to

warrant copyright protection. *Id.* Importantly, though, even if a work is comprised of unprotectable elements, the combination of those elements "is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). Second, courts assess whether the elements of the two works sufficiently share objective similarities. *Malibu Textiles*, 922 F.3d at 952–53.

Defendant concedes that elements of its packaging "overlap" with Plaintiff's packaging, specifically the background color and white lettering, but those elements "are not copyrightable elements per se." (Mot. at 11.) Defendant argues that the only protectable element of Plaintiff's '292 Registration is the center graphic featuring three toys placed in a line, which is dissimilar to the graphic Defendant uses. (Mot. at 11.) To be fair, the two graphics are not exact replicas: Plaintiff's graphic shows three different, blue-colored toys outlined in white displayed neatly and linearly, while Defendant's graphic shows at least six toys in various colors stacked haphazardly on top of each other. (*See* FAC ¶ 35.) Assuming that the only protectable element of the '292 Registration is the center graphic, the Court agrees with Plaintiff that the combination of the graphic with other unprotected but concededly "overlapping" elements, including the background pattern and color, the center stripe, the font and color of the words, and arrangement of all these elements are numerous and original enough to state a claim for copyright infringement. (*See* Resp. at 13.) And there are many objective similarities between the combination of these elements, including the gradient of blue color across a geometric background pattern, the placement, sizing, font and color of the exact same words across the top half of the work, and the use of a center stripe that sets off a portion of the words. And while some details of the two graphics differ, they do share the same centered placement and bear the same cube and star-like toy.

Defendant argues that Plaintiff's copyright infringement claim is pled only under a "substantially similar" theory and must allege access. (Mot. at 10.) There is no doubt that

Plaintiff expressly asserted that theory in its pleading. (FAC ¶¶ 32, 44–47, 73.) But Plaintiff argues that it implicitly pled a "strikingly similar" theory of infringement by alleging "various descriptions of Defendants' copying of the various elements of the copyrighted packaging and through its side-by-side comparison of the Infringing Product to Plaintiff's copyright." (Resp. at 16 n.1.) If the Court credits Plaintiff's argument, then Plaintiff would not be required to sufficiently allege access. But the Court need not address this issue because Plaintiff alleges facts to support the access element.

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." When, as here, there are no facts supporting direct evidence of access, "circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Art Attacks Ink*, 581 F.3d at 1143.

Plaintiff alleges that it displayed the content of its '292 Registration on its product page on Amazon and was generally available to any Amazon user (FAC ¶¶ 28, 34, 43, 73), and Defendant released its infringing product sometime after Plaintiff started marketing on Amazon (FAC ¶¶ 50, 72). Defendant argues that these allegations suggest online availability but not access, and "[t]he fact that a work is online does not by itself make it likely the Defendant saw or encountered it." (Mot. at 12). Plaintiff contends that Defendant must have found Plaintiff's Amazon listing because Defendant eventually used Amazon to sell the infringing product. But Plaintiff's reasoning puts the cart before the horse; it alleges no chain of events *before* the time Defendant began selling its product on Amazon that explains how Defendant discovered and copied Plaintiff's product.

Plaintiff alternatively argues that its allegations demonstrate its product was widely disseminated. (Resp. at 15–16.) Defendant does not reply to this argument. (*See* Reply at 8–11.) Allegations supporting wide dissemination of a product can establish the access element. *Art Attacks Ink*, 581 F.3d at 1143. Here, Plaintiff alleges that it spent millions of dollars on its marketing efforts and sold hundreds of thousands of units of its product, and

that activity led to at least 16,000 customers giving it a generally positive star rating and reviews on Amazon. (FAC ¶¶ 19, 21–22). While the number of units sold may support a finding of wide dissemination, "there is ultimately no 'bright-line rule' where some number of units distributed always equals—or does not equal—access." *Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1222 (9th Cir. 2025). Still, the magnitude of Plaintiff's sales, customer interaction, and millions of dollars' worth in marketing expenditures over five years exceeds that which has been accepted in this Circuit under a "widespread dissemination" theory of access; the allegations are sufficient here to plead wide dissemination. *Compare L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012) (local sale of 50,000 yards of fabric over four-year period was sufficient) *with Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (17,000 units sold was insufficient) *and Art Attacks Ink*, 581 F.3d at 1144 (2,000 units sold annually was insufficient).

Plaintiff sufficiently pleads that it owned the '292 Registration and that Defendant copied that work under a "substantially similar" theory of infringement. Accordingly, Count Four survives.

**IT IS ORDERED** denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17).

Dated this 24th day of June, 2026.

Honorable John J. Tuchi
United States District Judge

- 11 -